Chee, thank you. The first issue raised was the testimony regarding count 1 and the admissibility of statements that were introduced in the evidence, also in conjunction with the witness's inability to independently recollect what had happened in this case. It's our position that she did not. And in fact, on four separate occasions, told us that she could not remember what happened and testified based solely on. Mr. Williams, could you help me focus on this a bit? As I gathered from the transcript, she testified to the bathroom incident without any assistance or prompting. She did, but let me just, just so you can tell me whether I'm right or whether I'm wrong. And then she couldn't remember when it happened, and she looked at the agent's notes, Agent Rice's notes, for that purpose. The record then got a little confused. But she testified just flat out to the bathroom incident and was able to say, well, I know that that happened because her stepfather's friend and friend were there. Well, some of the things that she testified to were things that she had never said before, which leads me to believe that they are not based on a prior memory, but may have been just made up at the time. For example, she said that she was held by the defendant. She had never said that before. That appeared to have been something she had just made up at the time. Well, she may have made it up, but that's a different point. I mean, that's just a point for cross-examination, I would think. That's not a hearsay point. Well, if it's something that she doesn't recall or never recalled before, then the question is where did it come from. It does not come from her own independent recollection. She had been interviewed a number of times and never said that. Well, she never said it before, then presumably she didn't get the idea from Agent Rice's notes. That's true. Wherever she got it from, if it's not from her independent recollection, I would think that it would be hearsay. It's not from her own personal recollection. For example, the fact that she was touched under the clothing was something that she testified to. The count basis for count one is a touching over the clothing. So where she got that recollection from, I don't know, but it does not appear to be her own independent recollection or it was something that was made up at the time. Now, in the connection with the bathroom incident, there was the testimony of the mother and the aunt. Yes, but the mother... I'm sorry. And this is the only one for which she was convicted. That's the only count. That is correct. So it seems hard to think that the evidence was not adequate as to that one count, as distinguished from all the rest, because she testified... the victim testified independently up to the point of she didn't know the date. And then there's the mother and there's the aunt. So I find it difficult to think that there was not sufficient evidence as to that one incident. The mother's testimony was to a reference to a time in December of some time in 2004, but she also indicated, in contradiction to what the victim said, that she was at... she asked and the victim said that nothing had happened on that particular day. So really, the only testimony of the mother was that there was some incident in December where she saw the victim and my client walk out of the bathroom together. But the testimony was also that when the victim was asked about that particular incident, she said nothing happened. But the mother called the aunt... With the suspicion that she believed something may have happened. Yes. Yes. Yeah. But that was based on nothing that the victim said. It was just... But something about looking at how the child looked. I believe it was she had a lost look about her and nothing more. And then confronted her and she simply nodded when asked if anything had happened. And for the... until the final alleged incident, there was nothing ever spoken about that particular incident. Mr. Williams, on a slightly different point, but if I understand it correctly, your argument on appeal is that there was an 801 D1B error. That is admission, I guess, of hearsay that wasn't a prior consistent statement? Correct. Would you spell that out for me? Because I don't think that was... I don't understand that that was the basis for the admissibility of her testimony anyway. So what is your theory on that? It was the basis for the testimony or the attempted testimony regarding the date, the specific date. Well, at least I've reviewed the record and I don't see any discussion of it. I see the district court was concerned about 612, which is revived recollection. But I don't recall having seen anything about prior consistent statements. The prior consistent statements came in again after... Oh, that may be correct, Judge. I'm sorry. Okay. Even if the court believes that the statements of the juvenile was admissible, we still have the problem with the date as it refers to count one. She never testified as to the specific date as to when this happened. The prosecutor tried to elicit from her testimony that she had gotten from reading the report of the agent and was still over objection, unable to say when the specific date was. Does that matter? Pardon me? Does that matter when, as Judge Fletcher said, you had cooperating evidence from the mother and the aunt together with what she told Agent Rice? I think it would matter if on that particular date there was some evidence that something had happened other than that these two people were found in a bathroom in a one-bedroom house, one-bathroom house where there only is one bathroom, and the only evidence of something that possibly happened was that the young lady had a lost look about her. But that's all we have, and so we don't know if anything happened on that particular case or the reason for the particular look on the child's face. All we really have to go on is what the statements of the child was. Don't we also have, you know, you're passing over the statement that the defendant made to you. There is a statement by the defendant, but he does not refer to any particular act as well or specific date. He does refer to the first time, and there is talk of touching over the clothing, but there was nothing that I could find that would suggest that those two incidents were the same. Okay. When the child could not particularly establish the date, that's when they would call Agent Rice to testify pursuant to 8035, which is a past recollection recorded, and that has three elements. The witness has to once have knowledge of the event, the witness has to have insufficient knowledge to testify, and the record was made by or adopted by the witness at the time the matter was fresh in the witness's memory and reflected the memory correctly. I'm not sure if this applies, excuse me, to the Agent Rice as the witness, but she clearly only had knowledge of the hearsay statement of the juvenile, and there was no showing that she had an insufficient recollection. So if the witness that we are referring to is the juvenile, there was no showing that she adopted the statement at or near the time that it was made. Clearly, she did not make the document. That document was generated by the agent. So it would require that at the time that the statement was given that she would have either, that she adopted it, for which she did not. She was somehow asked questions and adopted it during the course of the trial, but I think the rules require that it be adopted at the time that the statement was made, and that did not happen in this particular case. Regarding the issue of vouching, what was said in closing the argument was that the juvenile was honest. I don't know how we can infer that that means anything other than the government giving it to personal assurance that she was telling the truth. Mr. Williams, I have two questions about that. One is whether that, the first one, though, is that is that the way that you necessarily have to read it? You know, that's exactly the way it appears in a written transcript. But it's capable either of conveying T.B. was honest, she told you. Or it could be capable of being interpreted as T.B. was honest, she told you. And there's a fair difference. In other words, one of them is the prosecutor's, the prosecutor arguably himself or herself saying she was honest or saying as one sentence, she was honest, she told you. And she did testify that she was doing her best, and she did tell Rice the truth and whatever, so there's a basis in the record for the prosecutors saying she told you she was being honest. There is also a basis for the fact that she was contradictory and was confusing and that the prosecutor was trying to bolster her testimony by saying her belief that she was honest. Well, if we accept this as vouching, which I'm inclined to do, there was a curative instruction, and is that enough? I don't think so. Obviously, we're stuck with the, well, one has to request for one, and we did, but we did not or I did not think that that was sufficient, based on the weakness of the government's case and then the statement made by the prosecutor. There's case authorities that if it's corrected immediately, corrective instruction, that that's good enough, and you don't think it's good enough in this case? Not in this particular case, because of the obvious weakness in the government's case, which was evident by the fact that she was acquitted by three other counts. It seems to me that they acquitted on three other counts, in a way, shows that the jury was very capable of segregating out what's sufficient evidence and what isn't sufficient evidence, so it almost cuts the other way. The final issue was the issue of acceptance of responsibility. Mr. Chi was interviewed some five days after the event, as evidenced by the court, that there was an admission that he, it was both an oral and a written statement. After that, he immediately moved out of the home. The statement was used against him at trial, and it is my belief that, but for that statement, based on the weakness in the government's case, Mr. Chi would not likely have been charged with this, with these crimes, because there was no physical evidence to support the claims in this case. So, clearly, he accepted responsibility by not only his statement, but his actions of moving away and no longer becoming a threat, by continuing to support the family, and then the fact that these things were used against him at trial. I think this is a rare situation for this reason. There were four counts charged against Mr. Chi. The less serious charge of count one, for which he was found guilty, and the more serious counts two and three and four, which carried an extreme penalty. Mr. Chi was never given the opportunity to plead to count one, the count for which he was convicted of, and which carried a much less serious penalty. He was only offered a count, the opportunity to plead to counts either two, three, or four, which would have subjected him, I believe, to anywhere between 11 and 14 years in prison. Knowing what the evidence was against him, which primarily was the statement that he gave, he was facing approximately 360 months to life if he had gone to prison. Once he was told that by me, he decided that it was in his best interest to take the plea offered by the government, because that would significantly reduce his time in prison. However, once we attempted to enter the plea, he decided that he could not, did not wish to plead to something that he felt he did not do, and therefore backed out of the plea. Eventually, he did finally go with the plea agreement, but that again was after he was confronted with basically the rest of his life in prison if he did not accept the plea agreement. And so he did so, but then shortly after, and I can tell the court that even the plea was a very difficult proceeding for him to go forward with. But he did so, in my opinion, solely because he knew of the amount of time that he was facing if he was convicted of these charges, which are very often overcome, difficult to be overcome, because of the nature of the charges themselves. In any event, once he had gone forward with the plea, he contacted me and told me that he could not go forward with this plea, because he felt he did not do it, and he would prefer to go to trial and take his chances, and that's what he did. But again, he was never given the opportunity to plea to the lesser charge, and so never given the opportunity to accept responsibility for that. But it is our position that he did accept responsibility when he basically gave the oral and written statement to the government. I have nothing further. Okay. Thank you. Mr. Williams. Ms. Ruffenbach. Thank you. Good morning. Joan Ruffenbach, District of Arizona, appearing on behalf of the United States. In this case, the victim testified on direct examination to all of the elements of the offense of Count 1, with the exception of the date. That was testimony in her own words. The court allowed her to have her recollection refreshed, and from there on, there was confusion in the testimony with regard to the other counts, as well as to this count. Therefore, the district court allowed the victim to be recalled the following day. After recalling the victim and having the direct cross, redirect examination, the district court specifically found that the victim had testified from her own independent recollection, and also as a result of having her recollection refreshed. And the government submits that that was a proper finding based on, with respect to Count 1, her initial testimony, and the fact that it was supplemented by Agent Rice providing the report, and the victim then testifying thereafter that it happened in 2004 or 2005. Because that testimony, together with the testimony of the mother, who placed it at December 23rd, defendant's birthday, Jeffrey and his girlfriend were there. Victim comes out of the bathroom with a lost look in her eye. Mom calls sister. Sister corroborates that she received the telephone call in late December. And I'd couple that also. It's not in the government's brief, but if you take a look at the defendant's the first time it happened that he was drunk. And the government submits that they had the mother also testified that they had been drinking because they were celebrating the defendant's birthday. So I think that all of that together would show that even if there were error in this case, the error was clearly harmless because there was cumulative other evidence, particularly because the testimony that was supplemented went only to the date of the activity, not the activity itself. With regard to the vouching issue, the government submits first that if it's read in context, that the statement that was made by the prosecutor was not vouching. And I say that because if you look at the preceding four paragraphs, all of them have to do with the testimony that was elicited with regard to the victim. Because of the victim, the first of those paragraphs discusses the demeanor of the victim. The second paragraph immediately preceding talks about what you heard from, what the jury heard from Agent Rice and from the forensic nurse who testified with regard to how children report these kind of crimes. The third paragraph discusses the victim herself, her memory, what she remembered, what she had trouble with, her specific testimony. And then you have a general argument about how people remember things, children remembering things versus adults remembering those things. And immediately after that, you have the statement that defendant challenges. Memory is not exact, and that's something important to remember. TV was honest. She told you. And then it goes on from there. And I submit that in that context, it was inartful, but I think it was clear that what the prosecutor was talking about, she was honest. She told you how she, her mother instructed her to be honest when she reported the offense to Agent Rice. It was a comment on testimony. And I think that's also supported by the district court's finding in this case, which was the district court didn't believe that vouching had occurred, thought that if anything, it was on the line, but out of an abundance of caution, gave a curative instruction. And while it was not given immediately after the statement was made, that was because the objection was not made until after the prosecutor had completed her closing argument. And at the first point, it was brought to the district court's attention. The district court did instruct the jury, and the district court spent six paragraphs instructing on that single error. And the government submits that, given that that is the only error that was alleged with regard to prosecutorial misconduct, that that single sentence was not enough to affect the verdict in this case, and it's more probably than not harmless. With regard to the acceptance of responsibility issue, the district court found that the defendant's statement that he made prior to law enforcement was a self-serving statement. And I think if the court takes a look at it, that this court would agree with the district court's finding because the defendant attempted therein to mitigate his conduct. The first time it happened, I was drunk. And it happened only over her clothing, except for once under her clothing. But the time that it happened under her clothing, it was above her pubic area. And at trial, it was argued that that meant her stomach, not any – nothing with sexual intent. And with regard to the issue of the defendant was never offered – never allowed to plead guilty to count one, the defendant was never prevented from pleading guilty to count one. He was just never offered a plea agreement that encompassed only count one. So I think that's kind of a red herring argument. The district court is entitled to great deference with regard to its findings on the acceptance of responsibility issue in light of the fact that the defendant defended on the grounds that this was a fabrication that just snowballed into four counts against him. And that nothing that the victim said was true is sufficient to support the district court's finding that the defendant failed to accept responsibility, particularly when even after conviction on count one, he declined to talk to the probation officer and he stated that he had absolutely nothing to say at sentencing. And I'd submit that based on that, the judgment of conviction and the sentence in this case should be affirmed. Okay. Ms. Steyerrod, Mr. Williams. Judge, regarding the statement by the defendant that he was drunk during the first incident and the mother's comment that he had been drinking, I believe the testimony by the mother regarding that incident was that he had been drinking. I want to say he had a couple drinks, but he was not drunk, which does not correspond with the defendant's written statement. I disagree with the trial court's conclusion that my client's statements were mitigating. Maybe they were, in fact, true. They appear to be consistent with what the jury found in that he was found guilty of count one and acquitted of counts two, three, and four. Regarding the government's statement about his ability to plead to count one, it would be senseless and not only that foolish for him to plead to count one, leaving counts two and three and four remaining for which he would still be prosecuted. So, yes, he could have pled guilty to count one, but that would have got him nowhere other than still to have a trial on the remaining counts. Regarding the defendant's decision not to say anything at sentencing, it is always my practice that if a case is going to be appealed, which it always is after trial, that the defendant does not make any statements. Those statements presumably could be used against him at some later date. And it was a tactful decision, not a decision on behalf of the defendant, but by me and my advice to him that he not say anything at this time, knowing that there's going to be a subsequent appeal and hopefully a new trial. So that's the reason why he chose not to say anything at sentencing and simply rely on the statement that he gave previously. He did not testify at trial. He did not challenge the statement in any way. Trials or the way trials proceed are tactical decisions made by counsel, not by the defendant. The defendant only has the opportunity to decide to plead or to testify. All other decisions were made by me. So he chose not to testify, chose not to challenge the statement, so we do believe that at the very least that he should be entitled to the two points for acceptance of responsibility. Thank you. Thank you, counsel, both of you, for your argument. And the matter just argued will be submitted. We'll go next to your argument in United States v. Gonzales.
judges: Fletcher, Rymer, Duffy